OPINION *Page 2 
{¶ 1} This is an appeal by Defendant-Appellant Rita Turner from a finding of contempt entered against her by the Stark County Domestic Relations Court during post-decree divorce proceedings. Plaintiff Thomas Turner was also found in contempt during the same proceeding. Both parties were removed from the courtroom and jailed until each complied with the court's decree of divorce.
 {¶ 2} The parties were divorced on October 27, 2006 following a thirty year marriage in which the couple purchased a business known as "Ohio China Equipment Wholesale Company, LLC ("Ohio China"), a restaurant supply business. They also separately incorporated an entity known as TR Turner for the purpose of owning the real estate from which Ohio China conducted its business. One month before the divorce was finalized, Plaintiff Thomas Turner filed a Chapter 11 bankruptcy petition on behalf of Ohio China.
 {¶ 3} The trial court subsequently issued a Nunc Pro Tunc Judgment Entry Decree of Divorce on December 8, 2006. The relevant portions of the decree are stated as follows:
 {¶ 4} "1. "Plaintiff, Thomas Turner, agrees to pay Defendant, Rita Turner, as and for spousal support the sum of Seven Hundred Fifty Dollars ($750.00) per month for eleven (11) years, or until Defendant remarries, or dies, whichever event shall occur first. Payment shall begin on the 15th day of October, 2006 and be payable in monthly installments on the 15th day of each month until the term designated above shall have expired. Such spousal payments shall be paid by direct payment from the Plaintiff to the defendant until further order of the court. The issue of spousal support shall be *Page 3 
subject to the continuing jurisdiction of the court to modify the spousal support upward or downward at the request of either party. Plaintiff agrees to provide Defendant no less often than on a monthly basis all financial records of Ohio China Equipment Wholesale Company, LLC and TR Turner, LLC."
 {¶ 5} "2. The Plaintiff shall receive all rights, title and interest in and to the Limited Liability Corporation Known as Ohio China 
Equipment Wholesale Company, LLC. The Defendant agrees to sign all necessary corporate papers to transfer her interest in the corporation to the Plaintiff. The Plaintiff further agrees that he shall hold the Defendant harmless and indemnify her from any liability whatsoever concerning any aspect of said business whatsoever. It is further agreed that the Plaintiff's indemnification and hold harmless agreement herein shall apply to all forms of liability whatsoever including, but not limited to, tax liens, including tax, interest and penalties, if any, liens of any public entity, liens from any private entity, or lien holder, etc."
 {¶ 6} "3. The Plaintiff shall receive all rights, title and interest in and to the Limited Liability Corporation known as TR Turner, LLC. The Defendant agrees to sign all necessary corporate papers to transfer her interest in the corporation to the Plaintiff. The Plaintiff further agrees that he shall hold the Defendant harmless and indemnify her from any liability whatsoever concerning any aspect of said business whatsoever. It is further agreed that the Plaintiff's indemnification and hold harmless agreement herein shall apply to all forms of liability whatsoever including, but not limited to, tax liens, including tax, interest and penalties, if any, liens of any public entity, liens from any private entity, or lien holder, etc." *Page 4 
 {¶ 7} Neither party complied with the provisions of the divorce decree. The parties filed cross motions for contempt. Specifically, Plaintiff alleged Appellant failed to sign a quit claim deed for the rental properties and assignments transferring her ownership in Ohio China and TR Turner to Plaintiff. Appellant alleged Plaintiff failed to pay spousal support and provide Appellant with monthly financial records of Ohio China and TR Turner. The trial court set the hearing on the motions for February 21, 2007. The parties appeared before the trial court. Counsel for the parties presented opening arguments. The following exchange then took place:
 {¶ 8} "THE COURT: I'm extremely unlikely to give you people some more orders when you're not following any of the ones that I've given you up to this point."
 {¶ 9} "DEFENDANT: Excuse me? Object."
 {¶ 10} "ATTY PRITCHARD: My client-"
 {¶ 11} "DEFENDANT: I've been following everything."
 {¶ 12} "ATTY PRITCHARD: Rita. My client certainly-"
 {¶ 13} "THE COURT: You better just be quiet."
 {¶ 14} "DEFENDANT: I was speaking-"
 {¶ 15} "ATTY PRITCHARD: It's okay."
 {¶ 16} "DEFENDANT: What's the matter? Why's he looking at me like that?
 {¶ 17} "THE COURT: You're going to both be lucky if you don't go out of here in handcuffs-"
 {¶ 18} "DEFENDANT: What did I do?"
 {¶ 19} "THE COURT: Cause I'm this close. Are these transfer papers signed?"
 {¶ 20} "ATTY PRITCHARD: We have them, Your Honor." *Page 5 
 {¶ 21} "ATTY MANNOS: The corporation-"
 {¶ 22} "THE COURT: Alright, let's do that right now. She needs to sign those right now."
 {¶ 23} "ATTY PRITCHARD: Your Honor, could I address the Court on the issue of the refinancing? My client-"
 {¶ 24} "THE COURT: I don't think it says anywhere that there's supposed to be a refinancing before she signs."
 {¶ 25} "ATTY PRITCHARD: It doesn't explicitly say that, Your Honor, that was-"
 {¶ 26} "THE COURT: Right. So she needs to sign those documents now and if she doesn't do that, I'm going to have that man put handcuffs on her and take her to jail until she does."
 {¶ 27} "DEFENDANT: Can you make my case for me or shall I?"
 {¶ 28} "ATTY PRITCHARD: Rita, you can say whatever you want to the judge, I've already explained to him what your position is."
 {¶ 29} "DEFENDANT: Your Honor, this is my position, it was my very very clear understanding and I believe if we listen to the transcripts, the recording from the day that we were here in Court, and what I agreed to, it was stated to me that Tom would refinance and I would turn over my assets because obviously then he would own all the debt for those assets. It was my understanding that they were connected because obviously the asset is connected to the debt." I certainly would not give away my home but then retain the mortgage and so for me to give away the asset-"
 {¶ 30} "THE COURT: Are you going to sign those papers?" *Page 6 
 {¶ 31} "DEFENDANT: I would like you to listen to my argument, and if necessary to listen to the recordings from the day at trial-"
 {¶ 32} "THE COURT: Oh no, we're not doing that-"
 {¶ 33} "DEFENDANT: that show-"
 {¶ 34} "THE COURT: I have made-"
 {¶ 35} DEFENDANT: the understanding-"
 {¶ 36} "THE COURT: Ma'am, I'm speaking."
 {¶ 37} "DEFENDANT: that I had. I was finishing my sentence. Thank you."
 {¶ 38} "THE COURT: Alright, take her out of here. She's in direct contempt." See Transcript from February 21, 2007 Hearing at p. 9-11.
 {¶ 39} The trial court's charge reflects Appellant was charged with willful contempt pursuant to R.C. 2705.02, the indirect contempt statute, and not direct contempt under R.C. 2705.01. The trial court ordered that Appellant "not be released from jail until she signs corporate transfer documents, then 29 days suspend". Appellant was released from jail shortly after signing the documents.
 {¶ 40} It is from this finding of contempt that Appellant appeals.
 {¶ 41} Appellant raises two Assignments of Error:
 {¶ 42} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY FINDING HER IN CONTEMPT AND ORDERING HER TO JAIL WITHOUT AFFORDING HER THE OPPORTUNITY TO TESTIFY, CALL WITNESSES ON HER BEHALF, CROSS EXAMINE HER ACCUSERS AND OTHERWISE PRESENT RELEVANT EVIDENCE." *Page 7 
 {¶ 43} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT BY FINDING HER IN CONTEMPT AND ORDERING HER TO JAIL WITHOUT FIRST PROVIDING HER WITH A PURGE OPPORTUNITY.
 I. {¶ 44} Indirect contempt is a disregard of, or disobedience to, an order of command of judicial authority. R.C. 2705.02. Indirect contempt occurs when the defendant's actions occur outside the presence of the court. In re McGinty, 28 Ohio App.3d 219, 223, 507 N.E.2d 1204. Whereas, direct contempt is "misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice". Id., citing R.C. 2705.01. The standard for reversal of a contempt finding is "abuse of discretion." As set forth by the Ohio Supreme Court in State v.Birkel (1981), 65 Ohio St.2d 10, 417 N.E.2d 1249: "This court will not reverse the decision of the court below in a contempt proceeding in the absence of a showing of an abuse of discretion."
 {¶ 45} R.C. 2705.03 provides "In cases under section 2705.02 of the Revised Code, a charge in writing shall be filed with the clerk of the court, an entry thereof made upon the journal, and an opportunity given to the accused to be heard, by himself or counsel. * * * ". R.C. 2705.05(A) further provides "In all contempt proceedings, the court shall conduct a hearing. At the hearing, the court shall investigate the charge and hear any answer or testimony that the accused makes or offers and shall determine whether the accused is guilty of the contempt charge."
 {¶ 46} At the beginning of the hearing, Appellant's counsel made an opening statement: "Thank you, Your Honor. First of all, I would submit to the Court that prior any finding of contempt, I would like the opportunity for my client to testify. I think it's far *Page 8 
too complicated for something for the Court to resolve on statements of counsel." T. at 6.
 {¶ 47} The trial court then began conversing with Appellant's counsel and appellant intervened in the conversation because she apparently disagreed with the trial court's contentions. The trial court insisted that Appellant sign the corporate transfer papers without permitting testimony from Appellant as to why she had failed to sign the document. Apparently, Appellant was reluctant to sign the papers until Plaintiff refinanced the debt of Ohio China to which both parties were obligated. The divorce decree permitted the Plaintiff until April, 2007 to refinance.
 {¶ 48} However, the trial court simply would not allow Appellant to offer testimony in this regard. In doing so, the trial court failed to comply with R.C. 2705.05(A) which requires the trial court to "hear any answer or testimony that the accused makes or offers". We find the trial court abused its discretion by failing to allow Appellant to testify on her behalf and it is not clear from the record that she understood why she was being handcuffed.
 {¶ 49} Accordingly, Appellant's first assignment of error is sustained. Her second assignment of error is rendered moot. *Page 9 
 {¶ 50} The decision of the Stark County Domestic Relations Court is reversed and vacated.
Delaney, J. and Hoffman, P.J. concur. Edwards, J. concurs seperately.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Domestic Relations Court is reversed and vacated. Costs assessed to Appellant. *Page 10